## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>HRB WINDDOWN INC., *et al.*[1]<br><br>     Debtors | Chapter 11<br><br>Case No. 19-12689 (BLS) |
| ALAN D. HALPERIN, as Liquidating Trustee of the HIGH RIDGE BRANDS CO. LIQUIDATING TRUST,<br><br>        Plaintiff,<br>   v.<br><br>COLGATE-PAMOLIVE COMPANY,<br><br>        Defendant. | Adv. Pro. No. 21-51337 (BLS)<br><br>Re: Adv. D.I.  31, 32, 33, 34, 37, 38<br>40, 42, 43. |

## MEMORANDUM OPINION DENYING CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

Alan D. Halperin, the Liquidating Trustee of High Ridge Brands Liquidating

Trust  (the "Trustee"), filed an adversary complaint against Colgate-Palmolive

Company ("Colgate" or the "Defendant") to avoid and recover certain pre-petition

transfers made from the Debtors to Colgate as either preferential or fraudulent

transfers.[2]  Colgate filed a motion for summary judgment arguing that its post-

---

[1] The debtors in this jointly administered Chapter 11 case are: HRB Winddown, Inc. (f/k/a High Ridge Brands Co.); High Ridge Brands Holdings, Inc.; HRB Midco, Inc.; HRB Buyer, Inc.; GSI Winddown, Inc. (f/k/a Golden Sun, Inc.); CFL Winddown, Inc. (f/k/a Continental Fragrances, Ltd.); FCI Winddown, Inc. (f/k/a Freshcorp, Inc.); COC Winddown, LLC (f/k/a/ Children Oral Care, LLC); and DRF Winddown, LLC (f/k/a Dr. Fresh, LLC) (together, the "Debtors").

[2] The Complaint includes four counts:  Count I – Avoidance of Preference Period Transfers under 11 U.S.C. § 547; Count II – Avoidance of Fraudulent Conveyances under 11 U.S.C. § 548(a)(1)(B); Count

petition critical vendor agreement with the Debtor precludes the Trustee from proving all elements of a § 547(b) preferential avoidance action, and also contending that the undisputed facts establish an ordinary course of business defense under § 547(c)(2). The Trustee then filed his own motion for summary judgment, asserting that the undisputed facts show that all elements of § 547(b) are met here.

For the reasons discussed below, both cross-motions for summary judgment will be denied because there are genuine disputes regarding material facts.

<u>BACKGROUND</u>

High Ridge Brands Company and its affiliates (the "Debtors") were one of the ten largest independent branded personal care companies in the United States by volume.[3] Colgate sold commercial and personal care products to the Debtors on wholesale, which the Debtors then resold at retail.[4]

The Debtors filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code on December 18, 2019 (the "Petition Date"). On the same date, as part of the First Day Motions, the Debtors filed a motion to pay prepetition claims of "critical vendors and service providers."[5] The Court granted the Critical Vendor Motion on December 19, 2019, authorizing (but not directing) the Debtors to pay critical vendor claims.[6] As permitted by the Critical Vendor Order, the Debtors and

---

III -Recovery of Avoided Transfer under 11 U.S.C. § 550; and Count IV - Disallowance of Claims under 11 U.S.C. § 502(d) and (j).

[3] Comp. ¶ 16.

[4] Br. in Supp. of Colgate's Summary Judgment Mot. (Adv. Docket No. 33) ("Colgate's Brief"), App'x 1 (Affidavit of Rosalia Santa Cruz Santos in support of Defendant's Motion for Summary Judgment, ¶ 7).

[5] Main Case Docket No. 10 (the "Critical Vendor Motion").

[6] Main Case Docket No. 42 (the "Critical Vendor Order").

Colgate entered into a Trade Agreement under which the Debtors agreed to pay Colgate's pre-petition claims in the amount of approximately $93,000 in exchange for Colgate's commitment to continue supplying goods to the Debtors.[7]

On October 8, 2020, the Court entered the Confirmation Order approving the Joint Chapter 11 Liquidation Plan.[8]  The Plan and Confirmation Order established the High Ridge Brands Liquidating Trust (the "Trust") on October 30, 2020 (the "Effective Date") and transferred the Retained Estate Causes of Action (including avoidance actions under Chapter 5 of the Bankruptcy Code) to the Trust.[9]

On December 14, 2021, the Trustee commenced this adversary proceeding against Colgate to avoid and recover eight transfers totaling $820,154.16 made within 90 days prior to the Petition Date pursuant to Bankruptcy Code §§ 547, 548, 550 and 502(d).[10]  Colgate filed an answer to the complaint and, thereafter, the parties held an unsuccessful mediation session.  The parties engaged in discovery.

Colgate filed its motion for summary judgment and a statement of undisputed facts on September 29, 2023.[11]  The Trustee filed his response in opposition to Colgate's motion for summary judgment and Colgate filed a reply thereto.[12]  Colgate argues that the transfers cannot be avoided because:

(i)     The Trustee's preference claim fails to meet all of the requirements of § 547(b), specifically § 547(b)(5), because after the Bankruptcy Court

---

[7] Colgate's Brief, App'x 5 (the "Trade Agreement").
[8] *Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation of High Ridge Brands Co. and its Affiliated Debtors* (the "Confirmation Order" and "Plan," respectively).  Main Case Docket No. 619.
[9] *See* Confirmation Order, ¶¶ 3, 6; Plan, § IX.5.
[10] Adv. Docket No. 1.
[11] Adv. Docket Nos. 31, 32, and 33.
[12] Adv. Docket Nos. 40 and 43.

authorized the Debtors to designate "critical vendors," Colgate and the Debtors entered into a Trade Agreement providing for full payment of Colgate's pre-petition claims; and

(ii)    The allegedly preferential transfers are protected by the ordinary course of business defense of § 547(c)(2).

The Trustee filed his own motion for summary judgment[13] on the preference claim, arguing that:

(i)    The Debtors never waived the right to bring avoidance claims against critical vendors.  Further, the Trustee claims that the Debtor would not or could not have paid the entire amount of the prepetition preference transfers under the critical vendor Trade Agreement because the amount of those transfers [$820,154.16] is "exponentially greater" than the amount paid under the parties' Trade Agreement [$93,000].  Therefore, the Trustee claims that all necessary elements of § 547(b), including § 547(b)(5), are met with respect to the Transfers; and

(ii)    Colgate cannot rely on the ordinary course of business defense due to the economic pressure exerted by Colgate against the Debtors during the prepetition preference period through credit holds and other actions designed to limit Colgate's exposure as the Debtors' financial situation worsened.

Colgate filed a response opposing the Trustee's motion for summary judgment and the Trustee filed a reply.[14]   Briefing on these matters is complete and the motions are ripe for decision.[15]

## STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary

---

[13] Adv. Docket Nos. 34 and 37.
[14] Adv. Docket Nos. 38 and 42.
[15] The parties did not request oral argument on the motions for summary judgment and the Court agrees that argument would not be helpful here.

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]  At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.[17]

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[18] And "[w]hen the moving party has carried its burden . . .the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*."[19] The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party.[20]

Finally, the standard for summary judgment is unaffected when the parties have filed cross-motions for summary judgment.  The Court must consider each party's motion separately and independently.[21]

---

[16] Fed. R. Civ. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

[19] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (internal quotation omitted).

[20]*Anderson*, 477 U.S. at 255, 106 S.Ct. at 2505 ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[21] *Arsenal Resources LLC v. Bayou City Equip. (In re Arsenal Resources Dev. Holdings, LLC)*, 2022 WL 14929358, *2 (Bankr. D. Del. Oct. 26, 2022) (*citing Panhandle E. Pipe Line Co. v. Utilicorp United, Inc.*, 928 F. Supp. 466, 470 (D. Del. 1996)).  *See also Iron Branch Assoc., LP v. Hartford Fire Ins. Co.*, 559 F. Supp.3d 368, 376 n. 34 (D. Del. 2021).

<u>DISCUSSION</u>

A.    <u>Claim to Avoid Preferential Transfers under 11 U.S.C. § 547(b).</u>

Section 547(b) of the Bankruptcy Code allows a trustee to avoid a transfer of the debtor's property that was:

(i)     made to or for the benefit of a creditor;

(ii)    for or on account of an antecedent debt owed by the debtor before the transfer was made;

(iii)   made while the debtor was insolvent;

(iv)   made within 90 days before the filing of the petition (or longer in cases against an insider defendant); and

(v)    that enabled the creditor to receive more than it would have received in a chapter 7 case or if the transfer had not been made.[22]

In his motion for summary judgment, the Trustee relies upon affidavits, answers to interrogatories, admissions, and other materials to assert that the following facts are undisputed in this case:

(1)    During the preference period in this case (September 19, 2019 through and including December 18, 2019) (the "Preference Period"), the Debtor made and Colgate received eight payments totaling $743,904 (the "Transfers").[23]

(2)    The Transfers were made via eight ACH payments from the Debtor High Ridge Brands Co.'s bank account ending in x2395.[24]

---

[22] 11 U.S.C. § 547(b).

[23] Decl. of Alan D. Halperin, Mem. of Law in Supp. of Pl.'s Mot. for Summary Judgment (Adv. Docket No. 37) ("Trustee's Mem."), Ex. 1 (the "Halperin Decl."), ¶¶ 5-6; Defendant's Amended Responses to Plaintiff's Interrogatories, Trustee's Mem., Ex. 2 ("Colgate's Interrogatory Responses"). The Complaint alleges the Transfers totaled $836,892.00, but Colgate asserts that the Complaint's total does not account for a 2% discount the Debtor could receive when paying early, thereby making the total of payments received during the preference period $820,154.16.  The Halperin Declaration notes that the Trustee agrees with the revised Transfer amount set forth in Amended Ex. A to Colgate's Interrogatory Responses.  The Trustee acknowledges that Colgate is entitled to a credit for new value under § 547(c)(4), so the preference exposure after accounting for new value is $743,904. Trustee's Mem. at 12.

[24] Halperin Decl., ¶ 7; Colgate's Interrogatory Responses, Amended Ex. A.

(3)     The Transfers were made for Colgate's benefit when Colgate was a creditor of the Debtors.[25]

(4)     The Transfers paid antecedent debt (that is, nine invoices owing by the Debtors to Colgate).[26]

(5)     The schedules filed in this bankruptcy case show that the Debtors' liabilities greatly exceeded its assets at the time of the Transfers.[27] Accordingly, distributions to general unsecured creditors will be far less than 100%.[28]

(6)     The Trustee knows of no evidence to rebut the presumption of the Debtors' insolvency.[29]

(7)     Colgate did not hold a fully perfected security interest in the assets of the Debtors.[30]

The Trustee argues that the foregoing undisputed facts establish all of the elements needed to prove a *prima facie* case for avoiding preferential transfers under Bankruptcy Code § 547(b).

Colgate, however, disagrees that the Trustee can prove § 547(b)(5) and argues that, as permitted by the Critical Vendor Order, the Debtors selected Colgate as a critical vendor and entered into a Trade Agreement providing that all of Colgate's prepetition claims would be paid in full in exchange for Colgate's agreement "to continue to provide goods and services to HRB based on 'Customary

---

[25] Defendant's Responses to Request for Admissions Nos. 4-5 (the "Colgate Admission Responses"), Trustee's Mem., Ex. 3.

[26] Colgate Admission Response No. 6.

[27] Main Case D.I. 264. The Plan estimates distributions to holders of Allowed General Unsecured Claims (Class 4) will be 5% or less, and distributions to holders of Allowed Unsecured Notes Claims (Class 5) will be 4% - 5%. Halperin Decl. ¶¶ 10-13.

[28] *Id.*

[29] Halperin Decl., ¶ 9

[30] Colgate Admission Response No. 10.

Trade Terms'" during the chapter 11 bankruptcy case.[31]  Because the Debtors had
agreed to pay all prepetition claims in full, Colgate argues that the Trustee cannot
prove that payment of the Transfers enabled Colgate to receive more than it would
receive if the case were converted to Chapter 7 or if the Transfers had not been
made.

 In *Kiwi International Air Lines*, the Third Circuit Court of Appeals held that
the trustee's preference action against a creditor was precluded by law due to the
debtor's earlier assumption of the creditor's contract under § 365, which required
the debtor to cure all defaults by paying any amount owing under the agreement.[32]
The Third Circuit determined that a creditor whose contract is assumed under
§ 365 is not similarly situated to general unsecured creditors who will not receive
100% payment of their claims against the debtor.[33]  The *Kiwi International* Court
held that the trustee could not avoid pre-petition payments to the creditor as
preferences under § 547(b) because, if the creditor had not received the payments
pre-petition, then the debtor would have been required to paid those claim in full
when the bankruptcy court approved the debtor's decision to assume the
agreements and cure any defaults.[34]

 Bankruptcy courts in this district have not uniformly extended the reasoning
of *Kiwi International* to cases where preference suit defendants assert that the

---

[31] Trade Agreement, p. 1.
[32] *Kimmelman v. The Port Authority of New York and New Jersey (In re Kiwi Int'l Air Lines, Inc.)*,
344 F.3d 311, 323 (3d Cir. 2003)).
[33] *Id.* at 318.
[34] *Id.* at 321.

"critical vendor defense" prevents a trustee from establishing the essential element of § 547(b)(5), denying summary judgment in some cases,[35] but granting it in another.[36]

Colgate argues that the facts of this case are analogous to *AFA Investment*[37] where the court granted summary judgment on a critical vendor defense. Here, as in *AFA Investment*, the parties entered into a written agreement that identified the creditor as a critical vendor and agreed to pay all pre-petition claims in exchange for the creditor's agreement to continue to provide goods and services to the debtors. The debtor's failure to identify a creditor as a critical vendor was an important consideration in other courts' refusal to grant relief on a critical vendor defense.[38] But here, as in *AFA Investment*, Colgate was undoubtedly a critical vendor.

The Trustee, however, distinguishes *AFA Investment*, noting that the amount of preferential transfers in *AFA* was $24,999 – a small sum unlikely to draw an

---

[35] *See Zenith Indus. Corp. v. Longwood Elastomers, Inc. (In re Zenith Indus. Corp.)*, 319 B.R. 810, (Bankr. D. Del. 2005) (striking the defendant's "essential vendor" defense to a preference claim as too speculative since Longwood would have to prove that the debtor considered Longwood as essential vendor *and* prove that, absent the pre-petition payments, the alleged preference amount of $506,035 would have been approved as part of the debtor's essential vendor motion, which capped payments at $1 million, without objection by any party-in-interest); *HLI Creditor Trust v. Export Corp. (In re Hayes Lemmerz Int'l, Inc.)*, 313 B.R. 189, 193-94 (Bankr. D. Del. 2004) (denying a creditor's motion to dismiss the preference complaint when the creditor asserted a critical vendor defense upon determining that the creditor was not identified in the critical vendor order and that the order permitted, but did not *require*, payment of critical vendors' pre-petition claims).

[36] *AFA Inv. Inc. v. Trade Source, Inc. (In re AFA Inv. Inc.)*, 538 B.R. 237 (Bankr. D. Del. 2015) Finding *Kiwi International* persuasive, the *AFA* court granted a creditor's motion for summary judgment on a preference claim based on the critical vendor defense. As permitted by the court-approved "essential suppliers order," the debtor and creditor executed a "continued services agreement" in which the creditor agreed to continue providing services to the debtor in exchange for payment of its pre-petition claim. *Id.* at 243-44. The *AFA* court distinguished *Hayes Lemmerz* and *Zenith*, since the creditor in *AFA* was identified as a critical vendor, the parties executed an agreement obligating the debtor to pay the prepetition claim, and the alleged preference amount ($24,999) was a tiny fraction of the approved critical vendor cap ($6 million). *Id.* at 244.

[37] *AFA Inv. Inc. v. Trade Source, Inc. (In re AFA Inv. Inc.)*, 538 B.R. 237 (Bankr. D. Del. 2015).

[38] *See* n. 35, *supra,* discussing *Zenith* and *Hayes Lemmerz.*

objection if it were included in *AFA's* critical vendor motion, which capped payments at $6 million.[39]  In contrast, the amount of the Trustee's preferential transfer claim against Colgate was $743,904 – significantly more than the $93,000 paid to Colgate under the Critical Vendor Trade Agreement.

In other words, if the Debtor's Critical Vendor Motion had included a request to pay Colgate $743,904 (instead of $93,000), is it possible that a party-in-interest may have objected to the relief, thereby barring any payment?  Other courts have denied critical vendor relief when faced with such a factual issue.  In *Zenith*, the court struck a critical vendor defense when the alleged preference claim was over $500,000 and the Court determined that adding that amount to the critical vendor payments (which were capped at $1 million) would materially alter the facts underlying the critical vendor motion.[40]  In *Maxus Energy*, the court denied summary judgment on a critical vendor defense, deciding that whether the creditor would be paid the full preference claim amount of $217,410 under a critical vendor order raised a genuine issue of material fact.[41]  The same factual dispute exists here.

Because this case raises a material factual dispute about whether the element of § 547(b)(5) or the critical vendor defense can be established here, the Trustee's and Colgate's motions for summary judgment will be denied.

---

[39] *AFA Inv.*, 538 B.R. at 244.

[40] *Zenith*, 319 B.R. at 818.

[41] *Farnan v. Vista Analytical Lab., Inc. (In re Maxus Energy Corp.)*, 615 B.R. 62, 73 (Bankr. D. Del. 2020).  *See also Insys Liquidation Trust v. McKesson Corp. (In re Insys Therapeutics, Inc.)*, 2021 WL 3083325, *5 (Bankr. D. Del. July 21, 2021) ("[T]he fact that a creditor was named in a court order as a 'critical' or otherwise important customer of a debtor is not in and of itself enough to bar a preference claim; something more is required.").

B.    <u>Ordinary Course of Business Defense</u>

Section 547(c)(2) of the Bankruptcy Code provides that the Trustee may not avoid a preferential transfer under § 547(b): "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was:  (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms."[42]  The party asserting a § 547(c) exception to avoidance (such as the ordinary course of business defense) has the burden of proving nonavoidability.[43]

"Deciding whether a transfer was made within the ordinary course of business between a debtor and creditor under section 547(c)(2)(A) is a subjective, inherently fact-intensive inquiry, aimed at determining whether the transfer at issue conformed with the 'normal payment practice between the parties.'"[44]  To determine this, courts have considered the following factors:

(1)    The length of time the parties engaged in the type of dealings at issue;

(2)    Whether the subject transfers were in an amount more than usually paid;

(3)    Whether the payments at issue were tendered in a manner different from previous payments;

(4)    Whether there appears to have been an unusual action by the debtor or creditor to collect on or pay the debt; and

---

[42] 11 U.S.C. § 547(c)(2).  Section 547(c)(2) is written in the disjunctive.  Here, Colgate seeks to prove the Transfers were a continuation of the parties ongoing business relationship.

[43] 11 U.S.C. § 547(g).

[44] *Miller v. Direct Results Radio, Inc. (In re Diversified Mercury Commc'n, LLC)*, 646 B.R. 403, 413 (Bankr. D. Del. 2022) (quoting *Sass v. Vector Consulting, Inc. (In re Am. Home Mortg. Holdings, Inc.)*, 476 B.R. 124, 135 (Bankr. D. Del. 2012)).

(5)     Whether the creditor did anything to gain an advantage (such as additional security) in light of the debtor's deteriorating income.[45]

Colgate submits that comparing the timing, amount, and manner of the Debtors' payments to Colgate during a period of more than 18 months prior to the Preference Period (that is, between November 2017 to June 2019) (the "Base Period")[46] to the Debtors' payment of the Transfers during the Preference Period[47] shows that the Transfers continued the ordinary course of business between the parties. The Trustee disputes Colgate's analysis, however, arguing that a review of the same facts shows that 70% of the Debtor's payments to Colgate were paid late under the invoice terms during the Base Period,[48] while all Transfers during the Preference Period were all made on time.[49]

Beyond the parties' dispute over interpretation of the statistical analyses, the Trustee also asserts that Colgate cannot rely on the ordinary course of business defense because Colgate engaged in pressure tactics to obtain timely payment of its invoices during the Preference Period.[50]  The Trustee claims that Colgate learned

---

[45] *Mercury Commc'n*, 646 B.R. at 413 (citing *FBI Wind Down, Inc. v. Careers USA, Inc. (In re FBI Wind Down, Inc.)*, 614 B.R. 460, 487 (Bankr. D. Del. 2020)).

[46] Historical Period Analysis, Colgate's Brief, App'x 3.

[47] Preference Period Analysis, Colgate's Brief, App'x 2.

[48] The parties agree that the payment terms on Colgate's invoices were 2% 20 Net 21; and 22 out of 33 invoices during the Base Period were paid later than 22 days past the invoice date.  Colgate Interrogatory Response No. 3; Dep. of Rosalita Santa Cruz Santos, Trustee's Mem., Ex. 4 (the "Santos Dep.") 31:24-32:8).

[49] *See* Preference Period Analysis, Colgate's Brief, App'x 2.

[50] "Unusual collection efforts during the preference period may bring payment efforts outside the ordinary course of business 'when a differing payment interval alone is not enough to do so.'" *Mercury Commc'n*, 646 B.R. at 416 (quoting *Forklift Liquidating Tr. v. Custom Tool & Mfg. Co. (In re Forklift LP)*, 340 B.R. 735, 739 (D. Del. 2006)).  *See also Menotte v. Oxyde Chem., Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573, 582 (Bankr. S.D. Fla. 2010) (deciding that the defendant's use of credit holds was considered unusual collection activity, taking the payment outside the protection of the ordinary course of business defense).

about the Debtors' financial difficulties just prior to the Preference Period and designated the Debtors as a "high risk customer," using credit holds to prevent shipments if an invoice was past due.[51]  The Trustee argues that Colgate's credit hold threats caused the Debtors to timely pay the Transfers during the Preference Period.

In response, Colgate presents two arguments. First, Colgate claims that the only communication with the Debtors about a credit hold during the Preference Period was an email that mistakenly asked for payment of invoices which the Debtors had previously paid.[52]  Because the invoices in question were already paid, Colgate argues that the credit hold email could not have influenced the Debtors' payments.

Second, Colgate asserts that its use of credit holds prior to the Preference Period shows that such holds were a normal business practice between the Debtors and Colgate.[53]  In support of its argument, Colgate submitted an Activity Report Extract (the "Report") noting the placement of a credit block on the Debtor's account on September 21, 2017 that was lifted on December 11, 2017.[54]  The Trustee, however, argues that the Report cannot be properly authenticated by the

---

[51] Santos Dep. 30:17-31:23; 37:7-25.

[52] Colgate's Resp. in Opp'n to the Pl.'s Mot. for Summary Judgment (Adv. Docket No. 38) ("Colgate's Response"), App'x 3.

[53] *See, e.g., Burtch v. Detroit Forming, Inc. (In re Archway Cookies LLC)*, 511 B.R. 726, 728-29 (D. Del. 2013) (deciding that payment pressure that is consistent with the historical dealings between the debtor and creditor will not preclude an ordinary course of business defense); *Miller v. Westfield Steel, Inc. (In re Elrod Holdings Corp.)*, 426 B.R. 106, 112 (Bankr. D. Del. 2010) (deciding that phone calls to collect unpaid invoices and threats to withhold shipment during the preference period were consistent with creditor's prior dealings and did not preclude the ordinary course of business defense).

[54] Colgate Response, App'x 2.

Supplemental Affidavit of the Debtors' finance manager because she testified at her deposition that she did not recognize the Report nor had she ever seen it before.[55] Therefore, the Trustee argues that the Report should not be considered in connection with the summary judgment motions.  Moreover, even if Report can be considered, the Trustee argues that any prior credit holds listed therein were too inconsistent to establish a prior course of dealing between Colgate and the Debtors.

Based on the foregoing disputes regarding material facts, the Court cannot determine the parties' competing requests for summary judgment on the ordinary course of business defense of § 547(c)(2).

<u>CONCLUSION</u>

For the foregoing reasons, the Trustee's and Colgate's motions for summary judgment will be denied.  An appropriate Order will be entered.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

Dated:  September 19, 2024

---

[55] Santos Dep. 41:13 – 42:2.